IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC. d/b/a PRIMARY CHILDREN'S HOSPITAL,<br><br>Plaintiff,<br>v.<br><br>WAL-MART STORES, INC. ASSOCIATES' HEALTH & WELFARE PLAN and THE ADMINISTRATIVE COMMITTEE OF THE WAL-MART STORES, INC. ASSOCIATES' HEALTH & WELFARE PLAN,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND**<br><br>Case No. 2:15-cv-846-JNP-EJF<br><br>Judge Jill N. Parrish<br>Magistrate Judge Evelyn J. Furse |

Before the court is Defendants Wal-Mart Stores, Inc. Associates' Health & Welfare Plan's (the "Plan") and the Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan's (the "Committee") Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Docket 18), and Plaintiff IHC Health Services, Inc.'s ("IHC") Motion for Leave to File a Second Amended Complaint (Docket 27). On May 24, 2016, the court held a hearing on both motions. The court then took the motions under advisement. After careful consideration of the record, the relevant law, and the parties' memoranda, the court GRANTS Defendants' Motion to Dismiss and DENIES IHC's Motion to Amend.

## BACKGROUND

This case involves an insurance dispute between IHC, the Plan, and the Committee. IHC is a healthcare provider that operates several hospitals in the Intermountain Area, including Primary Children's Hospital in Salt Lake City, Utah. The Plan provides medical benefits for

1

employees of Wal-Mart Stores, Inc. ("Wal-Mart"). The Committee is the designated plan administrator for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA").

C.H., a minor, was a beneficiary of the Plan through his mother, D.N. C.H. underwent surgery at Primary Children's Hospital in December 2012 to replace a ventriculoperitoneal shunt. During surgery, C.H. incurred injury to his vasculature structures and right internal jugular vein. These injuries were immediately repaired.

Although the Plan paid some benefits related to C.H.'s surgery, the Plan refuses to pay C.H.'s medical bills in full because the Plan believes some of C.H.'s treatment was for a hospital-acquired condition. IHC alleges that the Plan owes it $17,286.51 in unpaid medical benefits.

At the time of C.H.'s surgery, D.N. signed an Assignment of Benefits ("AOB") in IHC's favor. IHC therefore contends that it "stands in the shoes of C.H. as the proper party to bring this suit as per the AOB."

IHC initially believed that Regence Blue Cross ("Regence") was the plan administrator because Regence administered the claim. IHC requested that Regence provide it with a copy of the Summary Plan Description and Plan documents on three different occasions from July 2014 to July 2015. IHC's July 2015 request was addressed to both Regence and Wal-Mart. Neither Regence nor Wal-Mart told IHC that Regence was not the plan administrator. And neither party provided IHC with the Plan documents before IHC filed suit.

On December 2, 2015, IHC filed its original complaint against Wal-Mart, alleging three causes of action: (1) recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty under 29 U.S.C. §§ 1104, 1109, 1132(a)(2) & (3); and (3) failure to produce plan documents under 29 U.S.C. §§ 1024(b)(4) & 1132(c)(1). After IHC filed its complaint, defense

counsel informed IHC that the original complaint failed to name the correct parties. IHC subsequently filed an amended complaint on January 4, 2016 (Docket 3), removing Wal-Mart from the case and naming the Plan and the Committee as Defendants.

Defendants provided IHC with the Plan documents on February 10, 2016, and filed their motion to dismiss on February 16, 2016 (Docket 18). At this point, IHC became aware that the Plan prohibited AOBs. In reviewing the Plan documents then provided to it, IHC discovered that the Plan's 2011 Wrap Document and 2012 Summary Plan Description in effect at the time of C.H.'s surgery prohibit assignments of any kind by plan participants or beneficiaries to healthcare providers, such as IHC.

Defendants' motion to dismiss raises arguments against each of IHC's claims: (1) IHC lacks standing to bring its first cause of action—a claim for medical benefits due under 29 U.S.C. § 1132(a)(1)(B)—because the Plan prohibits assignments of any kind by plan participants or beneficiaries to health care providers, such as IHC; (2) IHC's second cause of action—breach of fiduciary duty under 29 U.S.C. §§ 1104, 1109, 1132(a)(2) & (3)—fails to state a claim upon which relief can be granted because it seeks the same relief as IHC's first cause of action; and (3) IHC lacks standing to bring its third cause of action—a claim for statutory damages pursuant to 29 U.S.C. § 1132(c)(1) against the Committee for failing to provide IHC with the applicable Plan documents—because plan administrators are only required to provide Plan documents to Plan participants and beneficiaries, and IHC is neither.

In an attempt to correct the problems highlighted by Defendants' motion to dismiss, IHC filed a motion for leave to file a second amended complaint (Docket 27), seeking to substitute C.H. as the plaintiff. Plaintiffs' proposed Second Amended Complaint describes IHC as "the agent of [C.H.] for purposes of an appeal of denied claims." IHC contends that Defendants and

its agent, Regence, created the confusion causing the current need to amend the complaint, that Defendants would not be prejudiced if the court granted IHC's motion, and that IHC and C.H. will be "extremely prejudiced" if IHC's motion to amend is denied because the statute of limitations for IHC's and C.H.'s claims has run.

Defendants respond that granting IHC leave to amend would be futile because, even if IHC amended its complaint, IHC's and C.H.'s claims are still barred. First, Defendants argue that "the Plan only allows a beneficiary to designate a representative to appeal on his behalf" via a Plan-specific "designation form." The 2012 Summary Plan Description further states that Plan participants and beneficiaries "may not file a lawsuit for benefits if the initial claim or appeal is not made within the time periods set forth in the claims procedures of the Plan." Because IHC and C.H. did not submit their appeal using the designation form, and because the 365-day appeal period has since run, Defendants contend that IHC's and C.H.'s claims are now barred.

Second, Defendants argue that even if IHC's and C.H.'s appeal were timely, the terms of the Plan bar lawsuits by or on C.H.'s behalf because the statute of limitations provided under the Plan expired eight months before IHC filed its original complaint.

Finally, Defendants argue that IHC's proposed amended § 1132(c)(1) claim regarding Defendants' failure to provide plan documents is futile because "IHC has not pleaded that anyone ever requested Plan documents directly from the Committee, the designated Plan Administrator." Rather, IHC only requested Plan documents from Regence—the party that IHC believed to be the plan administrator. Because only an ERISA plan administrator can be liable to a participant or beneficiary to provide plan documents, Defendants argue that IHC's amended claim is futile.

In reply, IHC contends that "Defendants hamstrung the Plaintiff by keeping all relevant

4

documents out of its hands until this point in litigation." IHC further argues that had Defendants provided them with the Plan documents or informed them of the actual plan administrator's identity, IHC and C.H. "would have been able to comply with any and all of the requirements of the Plan." IHC also argues that Defendants' new arguments regarding the futility of IHC's and C.H.'s claims were never raised during the claims appeal process. As such, IHC contends that Defendants should be precluded from raising these arguments now.

## ANALYSIS

The court first addresses Defendants' Motion to Dismiss before turning to IHC's Motion for Leave to File a Second Amended Complaint.[1]

## I. Defendants' Motion to Dismiss

In their motion to dismiss, Defendants argue that IHC (A) lacks standing to bring its first and third causes of action; and (B) fails to state a claim upon which relief can be granted as to its second cause of action. Each of these arguments is addressed below.

### A. IHC's First and Third Causes of Action

Defendants first argue that IHC lacks standing to bring its first and third causes of action. As to IHC's first cause of action, a claim for medical benefits due under 29 U.S.C.

---

[1] Although the court is addressing Defendants' motion to dismiss before turning to IHC's motion to amend its complaint, the court notes that it does so for reasons of judicial economy and not because of Defendants' "order of operations" argument.

At the hearing, Defendants argued that if a defendant files a Rule 12(b)(1) motion to dismiss based on a plaintiff's lack of standing, the court must grant the defendant's motion and the plaintiff is then precluded from filing a Rule 15 motion to amend its complaint to substitute the plaintiff with a party that actually has standing. In support of this "order of operations" approach, Defendants cite *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567 (2004). But *Grupo Dataflux* does not support Defendants' argument. In that case, the Supreme Court upheld its longstanding rule from *Conolly v. Taylor*, 27 U.S. 556 (1829), in which the Court held that "[w]here there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." *Grupo Dataflux*, 541 U.S. at 574–75 (quoting *Conolly*, 27 U.S. at 565). The *Grupo Dataflux* court went on to hold that because the "purported cure" of a jurisdictional defect "arose not from a change in the parties to the action, but from a change in the citizenship of a continuing party," dismissal for lack of subject matter jurisdiction was appropriate. *Id.*

Despite Defendants' contentions, the *Grupo Dataflux* rule simply does not apply to this case. IHC's Rule 15 motion to amend its complaint is for the purpose of changing the parties to the action. Nowhere in the *Grupo Dataflux* opinion does the Supreme Court state that courts are bound by a strict "order of operations" with regard to whether they must consider a Rule 12(b)(1) motion before a Rule 15 motion.

5

§ 1132(a)(1)(B), Defendants argue that IHC lacks standing because the Plan prohibits assignments of any kind by plan participants or beneficiaries to health care providers, such as IHC. And as to IHC's third cause of action, a claim for statutory damages pursuant to 29 U.S.C. § 1132(c)(1) against the Committee for failing to provide IHC with the applicable Plan documents, Defendants argue that IHC lacks standing because plan administrators can only be liable to Plan participants and beneficiaries, and IHC is neither.

Section 1132(a) dictates who may bring an ERISA claim. As to IHC's first cause of action, § 1132(a)(1)(B) allows a "participant or beneficiary" to bring civil actions in order "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Similarly, § 1132(c)(1) limits liability of plan administrators who fail to provide plan documents to plan participants and beneficiaries.[2]

IHC does not contest the fact that it is neither a Plan participant nor beneficiary and therefore does not have standing to bring either of these claims. Rather, in its opposition to Defendants' motion to dismiss, IHC argues that its lack of standing "can be remedied simply by . . . allowing [IHC] leave to amend to insert the proper party to bring suit." Aside from asking the court to grant it leave to amend its complaint to substitute C.H. as the plaintiff in this case,

---

[2] Under 29 U.S.C. § 1132(c)(1),

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

IHC does not challenge Defendants' standing arguments. Because IHC has conceded that it does not have standing to bring its first and third causes of action, the court grants Defendants' motion to dismiss on IHC's first and third causes of action.

### B. IHC's Second Cause of Action

Defendants next argue that IHC's second cause of action—breach of fiduciary duty under 29 U.S.C. §§ 1104, 1109, 1132(a)(2) & (3)—fails to state a claim upon which relief can be granted because it seeks the same relief as IHC's first cause of action. Defendants also argue that IHC lacks standing to bring its second cause of action because, as with IHC's first and third causes of action, IHC is neither a Plan participant nor beneficiary. IHC counters, arguing that its second cause of action should not be dismissed because IHC is merely seeking relief in the alternative. Again, IHC does not address Defendants' standing argument.

Under 29 U.S.C. § 1104(a)(1), "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." Section 1109 imposes liability for breach of fiduciary duty under ERISA. But § 1132(a)(2) limits who can bring suit for a § 1109 violation: "A civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Similarly, § 1132(a)(3) states that only "a participant, beneficiary, or fiduciary" can bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

As with IHC's first and third causes of action, IHC does not have standing to bring its second cause of action. IHC does not contest the fact that it is neither a Plan participant nor beneficiary. Because only Plan "participant[s], beneficiar[ies], [and] fiduciar[ies] may bring a

breach of fiduciary claim under ERISA, and IHC does not fall within any of these categories, the court grants Defendants' motion to dismiss IHC's second cause of action.

Accordingly, because IHC does not have standing to bring any of its claims, the court grants Defendants' motion to dismiss.

## II. IHC's Motion for Leave to File a Second Amended Complaint

Upon recognizing that it lacks standing to bring its complaint, IHC filed a Motion for Leave to File a Second Amended Complaint under Federal Rule of Civil Procedure 15 to substitute C.H. as the plaintiff in this case.

Under Rule 15(a)(2), "[t]he Court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). The Rule's purpose is to provide the parties "the maximum opportunity for each claim to be decided on its merits." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Despite this liberal standard, a district court may deny leave to amend for reasons "such as . . . futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendants contend that allowing IHC to amend its complaint would be futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). Here, Defendants argue that despite substituting C.H. as the plaintiff, the first and second causes of action are futile because they are barred by the Plan's terms. Defendants also argue that the third cause of action is futile because C.H. never submitted a request for documents directly to the Committee, the designated Plan Administrator. IHC does not address either of Defendants' futility arguments.

First, Defendants argue that "the Plan only allows a beneficiary to designate a representative to appeal on his behalf" via a Plan-specific "designation form." The 2012 Summary Plan Description states that a participant or beneficiary "may designate an authorized representative to submit appeals on [his or her] behalf by completing a designation form." But the Summary Plan Description is explicit: "The Plan will provide the appropriate form for you to complete and sign. *This is the only authorization form that will be accepted for another party to appeal on your behalf*." Nowhere in the Second Amended Complaint does C.H. allege that he or IHC completed the Plan's designation form.

The 2012 Summary Plan Description further states that Plan participants and beneficiaries "may not file a lawsuit for benefits if the initial claim or appeal is not made within the time periods set forth in the claims procedures of the Plan." The Plan establishes a 365-day limitations period to appeal denials of benefits. The Plan further states, "In order for [an] appeal to be considered, it must . . . [b]e in writing" and "sent to the correct address"—the Internal Appeals division of the Wal-Mart Benefits Administration. The Plan states that an appeal "will be handled within 60 days from the date it is received by the Plan."

The Second Amended Complaint does not state when the initial denial of C.H.'s claim for benefits occurred. But assuming that C.H. had validly designated IHC to conduct the appeal, and assuming that the denial of benefits occurred at the latest date possible—the day of IHC sent the first appeal letter, July 29, 2014—C.H.'s claims are still barred. Pursuant to the terms of the Plan, the appeal must have been filed within 365 days. Nowhere in the Second Amended Complaint does C.H. allege that a proper appeal was submitted to the Wal-Mart Benefits Administration. Indeed, if a proper appeal had been submitted, the parties to this action would have evidence of an appeal that had been handled within the Plan's sixty-day internal review

deadline. Because IHC and C.H. failed to follow the appeal process dictated by the Plan, the first and second causes of action are futile because they are barred by the Plan's terms.

Second, Defendants argue that even if IHC's and C.H.'s appeal were timely, the terms of the Plan bar lawsuits by or on C.H.'s behalf because the statute of limitations provided in the Plan expired eight months before IHC filed its original complaint. The Plan states that lawsuits must be filed "within 180 days after the final decision on appeal. . . . You may not file suit after that 180-day period expires."

Assuming that IHC's July 2014 letter constituted a valid appeal and that the Plan issued a final decision on appeal within sixty days, according to the terms of the Plan, C.H. and IHC were required to file suit within six months of that final decision. If the final decision denying appeal was issued in late-September or early-October 2014, the limitations period for filing suit expired in either late-March or early-April 2015. Here, IHC did not file suit until December 2015. Because IHC and C.H. were eight months too late in filing this lawsuit, the first and second causes of action are futile because they are barred by the Plan's terms.

Finally, Defendants argue that IHC's amended § 1132(c)(1) claim regarding Defendants' failure to provide plan documents is futile because "IHC has not pleaded that anyone ever requested Plan documents directly from the Committee, the designated Plan Administrator." Rather, IHC only requested Plan documents from Regence—the party that IHC believed to be the plan administrator.

As explained above, § 1132(c)(1) limits liability of plan administrators who fail to provide plan documents to plan participants and beneficiaries. Here, the ERISA plan administrator is the Committee, not Regence. Because only an ERISA plan administrator can be liable under § 1132(c)(1) to a participant or beneficiary to provide plan documents, the third

cause of action is futile.

In reply, IHC does not address the substance of any of Defendants' futility arguments. Rather, IHC protests that Defendants' behavior "isn't fair." Specifically, IHC contends that "Defendants hamstrung the Plaintiff by keeping all relevant documents out of its hands until this point in litigation." IHC further argues that had Defendants provided them with the Plan documents or given them the actual plan administrator's identity, IHC and C.H. "would have been able to comply with any and all of the requirements of the Plan."

IHC also argues that "Defendants are clearly ERISA fiduciaries and thus owe C.H." a duty that is "higher than marketplace standards." IHC acknowledges Defendants' argument that Defendants did not owe IHC a fiduciary duty because IHC did not complete the Plan's designation form. Indeed, IHC never argues that Defendants owed IHC a fiduciary duty. Instead, IHC focuses on its role as C.H.'s representative, arguing that Defendants violated their fiduciary duty to C.H. by not correcting *IHC's* error.

But IHC fails to explain why Defendants were obligated to correct IHC's error. IHC has not pointed to any provisions in ERISA or elsewhere that require plan administrators to provide plan information to third parties, such as IHC. Nor has IHC pointed to any provisions in ERISA dictating that plan administrators have a fiduciary duty to third parties. Indeed, "ERISA requires a 'fiduciary' to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Variety Corp. v. Howe*, 516 U.S. 489, 506 (1996) (quoting 29 U.S.C. 1104(a)(1)). To disclose plan information—including health information—to third parties who are neither plan participants nor beneficiaries would likely constitute a breach of this duty. *See* Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104–91, 110 Stat. 1936 (codified as amended in scattered sections of the U.S.C.) (prohibiting covered

entities, including employer-sponsored health care plans, from disclosing protected health information).[3]

Furthermore, IHC repeatedly argues that C.H. and D.N. signed a valid assignment of benefits authorizing it to act on behalf of C.H. Even if this assignment were valid under the Plan's terms, IHC's protests about Defendants' failure to notify IHC of the Plan's terms are still futile. "It is well recognized that '[t]he assignee [stands] in the shoes of the assignor.'" *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000, 1003 (Utah 2010) (quoting 9 JOHN E. MURRAY, JR., CORBIN ON CONTRACTS § 51.1 (rev. ed. 2007)). Thus, "'[t]he assignee is subject to any defenses that would have been good against the [assignor]; the assignee cannot recover more than the assignor could recover; and the assignee never stands in a better position than the assignor.'" *Id.* (quoting *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 676 (Utah 2001)). In short, "'the common law puts the assignee in the assignor's shoes, whatever the shoe size.'" *Id.* (quoting *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005)).

In stepping into C.H.'s shoes, IHC is bound by the terms of the parties' contract—here, the Plan. As an assignee, IHC cannot avoid the terms of the Plan, regardless of whether IHC had notice of those terms. And although IHC may protest the fairness of the Plan's provisions, IHC is nonetheless "subject to any defenses that would have been good against the [assignor]." *Id.* (quoting *SME Indus.*, 28 P.3d at 676). Because neither IHC nor C.H. followed the terms of the Plan in appealing the denial of benefits, both parties' claims are barred.

Accordingly, the court denies IHC's motion for leave to file a second amended complaint

---

[3] IHC further contends that Defendants' arguments regarding the futility of IHC's and C.H.'s amended claims were never raised during the appeals process. As such, IHC contends that Defendants should be precluded from raising these arguments now. But again, IHC has not provided any authority supporting its argument that Defendants had a duty to notify IHC—a third party entity and legal stranger to Defendants—of IHC's misunderstanding of the Plan's appeals process.

pursuant to Rule 15 because IHC's proposed amended complaint would be futile.[4]

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion to Dismiss (Docket 18) and DENIES Plaintiff's Motion for Leave to File a Second Amended Complaint (Docket 27). Plaintiff's claims are hereby dismissed with prejudice.

DATED this 12th day of July, 2016.

BY THE COURT:

Judge Jill N. Parrish
United States District Court

---

[4] As a final matter, the court notes IHC's failings in pursuing C.H.'s claims. At oral argument, IHC indicated that as a matter of course, patients who arrive at Primary Children's Hospital must sign a consent form before receiving treatment. Part of this consent form includes an "assignment of benefits" provision. IHC also indicated that "very few plans prohibit assignment"—aside from the Plan at issue in this case. In short, it appears that IHC's *modus operandi*—and the assumptions on which IHC operates—led IHC to improperly pursue C.H.'s claims in this case, through no fault of C.H.